## Case No. 9,343.

### MAYER v. GIMBEL.

[A state case. See 30 Leg. Int. 5.]

---

## Case No. 9,344.

### MAYER v. HERMANN.

[10 Blatchf. 256.] [1]

Circuit Court, S. D. New York. Dec. 12, 1872.

BANKRUPTCY — WHAT CONSTITUTES INSOLVENCY — SUBMISSION TO SUIT—EXECUTION THEREON —ATTORNEY AND CLIENT—NOTICE.

1. The inability of a merchant to meet his engagements, in the usual course of business, constitutes insolvency, within the meaning of the bankruptcy act [of 1867 (14 Stat. 517)].

2. The fact, that a merchant, in a mercantile community, who has no defence to debts maturing in his current business, submits to be sued, to compel payment of such debts, is very high evidence of inability to pay them.

3. The sale of the debtor's property, on an execution issued in such a suit, is a disposition of the debtor's property, for the benefit of the creditor, out of the usual course of business, and is evidence that the creditor has reasonable cause to believe in the debtor's insolvency, and contemplates a preference.

4. Although a debtor is not known to have yet committed an act of bankruptcy, his creditor, although he has reasonable cause to believe, or even knows, the debtor to be insolvent, may sue him, and proceed to judgment, execution and levy, for the purpose of proceeding against him in involuntary bankruptcy.

[Cited in Anderson v. Strassburger, Case No. 364.]

5. A creditor employed an attorney to collect his debt by suit. All the facts made necessary by the bankruptcy act to invalidate a preference gained by such suit, were made known to such attorney after he entered on such employment, and while engaged in collecting such debt by suit. The suit proceeded to execution and levy: Held, that the knowledge of the attorney was the knowledge of the creditor.

[Cited in Wight v. Muxlow, Case No. 17,629.]

[Cited in Mathews v. Riggs, 80 Me. 110, 13 Atl. 49; Shattuck v. Bill, 142 Mass. 64, 7 N. E. 39.]

6. It made no difference, that the information was received by the attorney after he had been retained by the debtor, and while he was advising the debtor what course to pursue, such retainer by the debtor being after the employment by the creditor and before the recovery of judgment.

[Appeal from the district court of the United States for the Southern district of New York.]

[This was a proceeding by Ferdinand Mayer against Moses Hermann, assignee in bankruptcy of Maurice Bendix and others, bankrupts, to have his lien against the bankrupts' property established, and praying that two judgments recovered by him in the state court be paid out of the proceeds of the property. From a decree of the district court dismissing the bill, plaintiff appealed.]

---

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

Samuel Boardman, for plaintiff.
Charles H. Smith, for defendant.

WOODRUFF, Circuit Judge. On the 2d of March, 1868, the plaintiff recovered two judgments, in a state court, against the above named bankrupts, one for $388 46, and the other for $320 44. Executions were, on the same day, issued to the sheriff thereon, and levied on personal property belonging to the bankrupts. On a petition filed March 6th, 1868, the bankrupts were adjudicated such, and the defendant was appointed their assignee, and an assignment was duly executed to him. Thereafter, under an arrangement between the plaintiff and the defendant, the property levied on was delivered by the sheriff to the defendant, to be held subject to a determination by the district court as to the validity of the lien of the plaintiff upon it. The plaintiff then filed his bill in the district court, praying that his lien might be established, and the judgments be paid out of the proceeds of the property. The defendant answered the bill, setting up that the executions and levies were void as against him, for the reason that, the bankrupts, being insolvent, did, within four months before the filing of the petition, with a view to give a preference to the plaintiff for the debts set forth in the judgments, procure their property to be seized by said executions, and thereby made a transfer of the property levied on; that the plaintiff then and there had reasonable cause to believe the bankrupts to be insolvent; and that the executions were issued in fraud of the provisions of the bankrupt act; that the attorneys for the plaintiff in recovering the judgments and issuing the executions, were the attorneys for the bankrupts in their petition in bankruptcy, and, at the time of recovering the judgments and issuing and levying the executions, had reasonable cause to believe the bankrupts to be insolvent; and that the transactions were in fraud of the provisions of said act. Proofs were taken, and, on a hearing, the district court dismissed the bill. From such decree the plaintiff appealed to this court. The attorneys for the plaintiff in the judgments were the attorneys for the bankrupts in the bankruptcy proceedings. One of such attorneys was called as a witness by the defendant, in this suit, and testified, that they had not been attorneys for the bankrupts prior to the bankruptcy proceedings; that he first saw the bankrupts in regard to their affairs just before the judgments were obtained, and after the suits were brought; that Bendix then came to his house and stated to him that the firm (Reichman & Co.) had sufficient assets to pay its debts, but his suspicions had been excited by the actions of the husband of Caroline M. Reichman, (one of the firm,) and that goods had been taken out of the store, which could not be traced, and he feared, that, unless some steps were taken in the matter, they would not be able to pay

their creditors, and the goods would disappear; that his (the attorney's) advice to him was, to immediately take possession of the store, and lock it up, and call a meeting of the creditors of the firm, and do something to secure them, by appropriating the goods to their benefit; that this was after the summonses in the suits had been served on at least two of the three defendants in it, Bendix being, at the time, aware of the summonses, although not served with them until two days after Mrs. Reichman was served, and five days after the remaining defendant was served; that Bendix, accordingly, locked up the store, and a meeting of the creditors was held, at which he (the attorney) attended, at the request of Bendix, and at which propositions were made and discussed to turn over the property to the creditors in full payment of their debts; that a majority of the creditors were in favor of that course, and a committee was appointed to investigate the affairs of the firm, and, at his (the attorney's) suggestion, the committee was empowered to take possession of the goods; that he (the attorney) heard nothing more of the matter until after the judgments; that then Bendix informed him that the proposition to take the property in payment of the debts had fallen through; that he then advised Bendix to go into bankruptcy; that he did not communicate with the plaintiff in regard to the matter, nor know personally on what day the summonses were returnable, or that the judgments had been obtained, until after they had been obtained; that he attended the meeting of creditors on behalf of Bendix; and that the plaintiff was not present at the meeting, and did not know of it.

The plaintiff was called as a witness by the defendant, and testified, that the debts for which the judgments were recovered were open accounts, for goods sold to the firm; that one account was due twelve days before the suit on it was commenced (both suits having been commenced February 21st); that he had sent for the money on it, and they had put him off, sending word that they would come in and pay; that he did not know that the meeting of creditors was to be held, nor learn of it after it had been held; that, when he directed suit to be brought against the firm, he had no idea that it was in a failing condition; that, when the executions were issued, he had no reason to believe that the firm was insolvent; that it was not proposed to him by the attorney to share ratably with the other creditors; and that, after he placed the claims in the attorney's hands, and swore to the complaints, he had no knowledge as to what was done in the suits.

The attorney also testified, that he stated, at the meeting of creditors, and that such was his opinion, that, if the stock of goods was fairly sold, and not sacrificed, and the debts were collected, there would be enough to pay seventy-five cents on the dollar, but that, if the goods were sold at auction, or by

an assignee, he did not believe they would realize more than forty or fifty cents on the dollar; and that such statement was made before the executions were issued.

The debts proved against the bankrupts are $11,021 32. The assets realized by the assignee are $2,961 82, in which sum is included $2,680 72, realized from the sale of the goods levied on.

1. The plaintiff had reasonable cause to believe that the firm was insolvent, before his executions were levied upon their goods, and that the collection of the judgments would operate to give him a preference. The parties, debtors and creditors, were both merchants. Inability to meet their engagements in the usual course of business has been again and again adjudged to constitute insolvency, within the meaning of the bankrupt law. When, therefore, a merchant fails to pay his notes, or other mercantile obligations, as they become payable, the immediate presumption of inability to pay arises. This is according to the universal sense of the mercantile world. When a merchant does not so pay, he is at once, and everywhere, assumed, in the common language applied to the subject, to have "failed." Quite true, there may be reasons, in any particular case, why payment at maturity is not made. There may be a defence to the apparent debt; the non-payment may be caused by accident, or carelessness and inattention; or it may be the result of some other special temporary cause, entirely consistent with amplest solvency. Nevertheless, where no such cause exists, non-payment, prima facie, imports inability to pay in due course of business, and creditors everywhere, in commercial communities, proceed on that presumption. True, also, mere non-payment of an account for goods sold is not declared to be an act of bankruptcy; but this proves nothing upon the question of probable cause to believe that the debtor, in such case, is unable to pay in due course of business.

In the present case, the debts were mercantile debts. They were not paid at maturity. The plaintiff knew it, and, on repeated applications for payment, he was put off by the debtors, their promises to pay were broken, and he was obliged to sue. It was manifest to him that his debtors did not pay in the usual course of business. There was no suggestion of any defence or other special, temporary, or accidental cause of delay; nor was there apparent to him, nor is there proved now, any circumstance warranting any other inference than that they could not pay, for want of means. The circumstances within his actual knowledge indicated insolvency, in the sense of the statute; and such insolvency existed in fact, as was reasonably to be inferred.

2. This reasonable cause to believe that the debtors were insolvent becomes greatly increased, when, besides failure to pay in due course of business, the debtor submits to be sued, and the creditor commences suit. That, in a mercantile community, a merchant debtor is so straitened, that, without pretence of any defence, he is under the pressure of suits to compel payment of debts maturing in his current business, is very high evidence of inability to pay. The unquestionable fact, that such pressure would be utterly destructive of his commercial credit, clearly shows that it is and must be deemed abundant cause of belief in his insolvency; and the pursuit of a debtor by such suit is a plain attempt to drive him either into a preferential payment, or to lay the foundation for a very proper proceeding in bankruptcy against him. Following such suit to judgment, execution, sale of his goods, and appropriation of the proceeds by the creditor, is not only accumulating evidence of the debtor's insolvency, at every step, but, when consummated by the actual sale of the debtor's goods for the payment of the execution, another ground of impeachment of the transaction arises. It is a disposition of the debtor's property, for the benefit of the creditor, out of the usual course of business. It is a case, if not within the letter, plainly within the spirit and analogy of "sales, assignments, transfers, or conveyances to a creditor, not made in the usual and ordinary course of business of the debtor," which, by section 35 of the bankrupt act, is declared "prima facie evidence of fraud," that is, is to be taken as prima facie evidence of actual fraud, or, at least, of a design to prevent the property from being distributed under the bankrupt act, or to defeat its object, or impair, hinder, or delay its operation and effect, or evade its provisions. It would be little short of absurdity, to say, that, when, under the circumstances of a case like this, the creditor has pursued his debtor down to an actual levy, he has not reasonable cause to believe that his debtor is insolvent, or that he can then proceed to a sale, for his own benefit, without contemplating the necessary result, if such insolvency exist, namely, a preference.

I have heretofore taken occasion to say— Coxe v. Hale [Case No. 3,310]—that this view of the rights and risks of creditors does not prevent, and need not discourage, suits against debtors who, not being known to have yet committed any act of bankruptcy, do not pay. The creditor, whether he has or has not reasonable cause to believe his debtor to be insolvent, has a right to bring suit. If a defence is interposed, he may go to trial and judgment. If no defence is interposed, he may take judgment by default. Nothing in the bankrupt law, and nothing above suggested, forbids this. I think, also, he may cause the goods of the debtor to be seized on execution. But, if he then knows, or has reasonable cause to believe, that the debtor is insolvent, and, therefore, knows, or has like cause to believe, that the appropriation of the property to paying his debts will operate to give him a preference, he must beware how he proceeds. An act of bankruptcy, the

debtor being insolvent, has now been committed. A suit, judgment, and levy, procured in good faith, for the purpose of forcing an insolvent debtor into bankruptcy, is not illegal. It may often be a proper, and, in short, the only present means of compelling an unwilling debtor to submit his property to the just distribution among his creditors, for which the law provides.

3. The plaintiff had reasonable cause to believe that the debtors were insolvent, and that his proceedings against them were taking or securing a preference, because, his attorney knew it, and the plaintiff, under the circumstances of this case, is chargeable with that knowledge. Such attorney was employed by the plaintiff to bring the suits, obtain the judgments, and collect the debts. All the facts made necessary by the statute to invalidate any preference thereby gained, were made known to such attorney after he entered upon that employment, and while in the prosecution thereof for the purpose of making the collection. In the actual endeavor to collect the debt, and by reason of that endeavor, the attorney was brought into contact with the debtor, and learned the condition of his affairs. If information of the debtor's insolvency, so acquired, is no impediment to securing a preference, by seizing and appropriating the debtor's effects, there would be little effective vitality in the provisions of the bankrupt law, and the just remedial enactments of the 35th and 39th sections, to secure equality among creditors, would be easily evaded. All that it would be necessary for the creditor to do would be, to put his claim into the hands of an attorney, perhaps one in a distant place, near the residence of the debtor, and abstain from asking or receiving thereafter any information as to the condition of the debtor, or the progress made in collecting the claim, until the money was actually realized and sent to him. He could then say, what is alleged in this case, that what his attorney might have learned was not to be imputed to him, as knowledge or reasonable cause to believe, and was, therefore, of no avail to defeat the actual preference obtained. It seems hardly necessary to enlarge upon these suggestions, The consequences which would result from sustaining preferences thus gained are too obvious. The knowledge acquired by an agent in the conduct of his employer's business is knowledge of his principal.

It is sought to withdraw this case from the operation of that rule, by insisting, that here the information was gained after a retainer by the debtor, and while advising the debtor what course to pursue in his condition of embarrassment, though before the recovery of judgment by the creditor. I do not assert a broad rule, that all the knowledge which an attorney or counsel receives from his clients, in their confidential relation, is to be deemed the knowledge of all his other clients, or to charge them with notice. No such broad

proposition is necessary to the ruling in this case. I do say, that, where the attorney of a creditor is prosecuting a debtor, to enforce payment of a debt, and, by reason thereof, the debtor discloses to him that he is insolvent, and asks his advice, and he assumes to give it, he may possibly find himself involved in some conflict of duty, for he certainly has no right to accept, in confidence, from the adverse party, information which his client ought to know, and which he ought not to conceal from him; but he cannot, by accepting such retainer, evade the operation of the rule. In every step of the prosecution of the claim to collection, he is the agent of the creditor, the performance of his duty to that creditor involves the gaining of knowledge of the debtor's insolvency, and no proffered confidence, put in him by the adverse party, can make that information less his client's property, or less information acquired in his agency, and imputable to such client.

The decree below must be affirmed.

---

MAYER (JENKINS v.).   See Case No. 7.272.

MAYER (UNITED STATES v.).   See Case No. 15,753.

MAYER (WARNER v.).   See Case No. 17,-185.

MAYERS (FARRELL v.).   See Case No. 4,-685.

MAYFIELD (CLARKE v.).   See Case No. 2,-858.